## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6746 | **DATE** | 4/14/2004 |
| **CASE TITLE** | PETER BENNETT vs. ARROW FINANCIAL SERVICES, LLC | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Judgment is entered in favor of defendant Arrow Financial Services, LLC and against plaintiff Peter Bennett.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 15 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 21 |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PETER BENNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 02 C 6746 |
| | ) | |
| ARROW FINANCIAL SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
APR 15 2004

MEMORANDUM OPINION AND ORDER

This case began with an overdraft on a Bank of America checking account in 1988 in the amount of, according to plaintiff, approximately $120; according to plaintiff's statement of the case, approximately $180; and, according to defendant, $181.24. Plaintiff testified that he had some financial difficulties at the time, the result of a serious head injury, and he thought Bank of America was going to reverse the charge, but it did not do so.

The record reflects that the debt surfaced again some fourteen years later, when Arrow Financial Services (Arrow) sent plaintiff a letter advising him that it had purchased the account and that the balance due was $601.41. Plaintiff's financial situation was no better – he was considering bankruptcy – and he did not respond. Further, he was aware that the statute of limitations had long since run and the debt was far too old to be included in a credit report. The telephone calls began in the late summer (the parties agree about that). Plaintiff testified to many calls beginning in early August 2002. He hung up on calls where the caller failed to identify himself. He finally took a call and the person said he was from defendant, gave a name, and said he was calling about the Bank of America account. He testified that he talked to someone at Arrow again in late August and a third time in September, each time

21

telling the caller the debt was too old and to stop calling him. During that period, and for a time thereafter, he also received calls where there was a delay before he was connected and which he terminated by hanging up before anyone said anything. He assumed those calls were from Arrow.

Arrow operates a computer-driven telephone collection call system. Its records show a total of five calls. The first was on August 28, 2002; there was a connection and the call lasted four minutes. According to those records, plaintiff said he was not paying and an attorney would call the following day. On September 6, 2002, Arrow called but there was no answer. It did get through on September 10, 2002, for a one-minute call, during which plaintiff said Arrow could not call anymore and if it did, he would sue. A call on September 23, 2002, got a busy signal, and Arrow got no answer to a September 27, 2002, call. There could have been other calls initiated, but never more than one a day and usually more spaced out than that. When the computer generated a call, it would transfer the call to an Arrow representative when the caller picked up the telephone, causing a brief delay. If the person called hung up before the transfer, the call would not be registered in the Arrow records.

We credit the company records. Plaintiff, by his own admission, was then unemployed and had other debts in collection. He undoubtedly was under considerable stress and he also undoubtedly was distressed by being dunned for payment of a small amount going back fourteen years before, which he quite rightly viewed as uncollectible. While he recalls three substantive calls, there were two, although in all likelihood there were a few attempts aborted by his hanging up before the call was transferred.

The case was tried in a couple of hours, with the principal issue being whether or not defendant violated 15 U.S.C. §1692d(5) by harassing plaintiff by "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to

annoy, abuse, or harass any person at the called number."

Two completed telephone calls, spaced a couple of weeks apart, are hardly intentional harassment. One can conjecture circumstances in which aborted calls could rise to the level of intentional harassment. For example, a creditor could repeatedly call a consumer at odd hours of the night and hang up when the consumer answers. But those were not the circumstances here. An automated system that could conceivably have placed one call a day (although that is unlikely) which is not recorded because the person called hung up before any connection was made, cannot be said to have been created to intentionally harass the person called.

Plaintiff also contends that Arrow misrepresented the debt, with $180 having ballooned to over $600, without explanation. Defendant's records indicate that the excess is interest, and interest was periodically accruing according to those records. If interest was compounding over fourteen years, the amount appears reasonable – if interest was authorized. But we have no evidence that it was not authorized, and it was plaintiff's burden to prove the violation. We do not recall any testimony that an Arrow representative represented that the debt would be reported to a credit reporting agency. Rather, it was plaintiff who testified that he told an Arrow representative that the debt was too old to report. Finally, while we do not rest upon it, the evidence of damages was very weak. This collection effort was, briefly, just one more stressor in what was, unfortunately, plaintiff's very stressful life.

We enter judgment for defendant.

JAMES B. MORAN
Senior Judge, U. S. District Court

April 14, 2004